Judge Ewing
delivered the Opinion of the Court.
Lindsey recovered a judgment against Elizabeth Stevens, on a note, in the Madison Circuit Court. She filed her bill, enjoining the judgment, alleging that a large debt was due her, for the maintenance of her children; that Lindsey had been appointed their guardian, and had assigned her a note in part discharge of the sum duo her, and taken the note upon which the judgment was recovered, alleging that it would be a good voucher for him, in the settlement of the estate.
By an amended bill, she alleged, that Lindsey had agreed to off-set the judgment against a largo balance that was due her for her dower interest in the rents of her deceased husband’s estate, and for the maintenance of the children.
Lindsey denied all the material allegations, and upon the hearing, a decree was rendered, sustaining the offset as to sixty dollars and the costs; and dissolving the injunction as to the balance of the judgment at law.
From this decree, Lindsey has brought the case to this Court, by writ, of error.
Three errors are assigned:—
First—that the case did not stand for trial at the time it was heard.
Second—that the heirs of James Stevens were necessary parties.
Third—that the proof did not sustain the decree upon the merits.
It seems that the amended bill was filed at the June term, 1835; that the answer thereto was never noted, as filed of record, at any of the intervening terms, between the filing of the amended bill and the decree, or any excuse given, for not having filed it; that it was *105 sworn to, before a justice of the peace, on the 8th of January, 1836, and is certified by the clerk, in making out the record, as having been found among the papers of the cause. But how, or when, it came there does not appear. The decree was rendered on the 3d day of March, 1836.
If the record fails to show how or when a deft’s answer got into a cause, he cannot complain that the cause was heard too soon after ans’r filed.
A guardian agrees to pay the mother of his wards a sum for their support, for a time: her demand for this, is against the guardian personally: the wards are not necessary parties to her bill to have it allowed to her, as a set-off against a judgment he has against her.
An answer is included in the transcript of a record, which the clerk certifies, he finds among the papers; how or when it was put there—whether before or after the hearing, does not appear; but the certificate of its being sworn to, shows, that it could not have been filed in due time: this court disregards it, and considers the allegations of the bill, as taken for confessed. But—
An answer that was placed among the papers within the time allowed for answering, tho’ not filed of record, would not be pretermitted—especially, where there was a motion, at the hearing, to file it, nunc pro tunc.
Under these circumstances, there can be no just ground of complaint, that the cause was tried prematurely. The regular time for filing the answer had passed by, and it was afterwards within the sound discretion of the Court to permit it to be filed at all. It would surely not be competent for the defendant, under these circumstances, to thrust it into the office, or among the papers of the cause, without asking leave to file it, and afterwards to ask a reversal of the decree, upon the ground that the cause was tried too soon after the answer was placed there. If so, a defendant may evade altogether the legal discretion of the Court in relation to filing his answer, after the proper time has passed by.
Second. The decree of set-off allowed, is predicated upon the confession of Lindsey, in his answer to a bill filed by the complainant, in the Clarke Circuit Court, against him and the heirs, for a settlement of her accounts—in which he acknowledges that he had made a contract with the widow, to board and clothe two of the children—Thomas and William, for the year expiring in October, 1830, and had promised to pay her sixty dollars therefor.
The service of boarding and clothing those two heirs, was undertaken and performed, at the instance and upon the faith of the contract with Lindsey, and she had a right to look to him alone, for the pay agreed on, and not to the heirs. They were, therefore, not essential parties to a suit to enforce the set-off, to the extent of the amount decreed,
Third. There is no connection between the demands, nor any allegation of insolvency, non-residency, or oth *106 er obstruction to the enforcement of the complainant’s demands, out of Lindsey and the heirs. The only ground upon which the set-off is sustainable, is an alleged contract with Lindsey to allow it, set up in the amended bill.
If the answer of Lindsey to the amended bill, is not to be regarded by this Court, then, the amended bill stands unanswered and uncontradicted, and may have been taken for confessed. And as the allegation is distinctly made, that Lindsey had made a contract with her, to allow the set-off, and standing uncontradicted—the fact of the contract is sufficiently made out, without proof, and justifies the decree to the full extent that it was given.
That the answer should not be noticed by this Court, is clear. It was never filed of record. Whether it was placed among the papers of the cause, before or after the hearing, does not appear. It was certainly not placed there in regular form until the 8th of January, 1836, or afterwards. The regular time for filing it had passed by, long before that, and it could not be filed of record, except by the special leave of the Court, and for good cause made out.
Though, the Court might not pretermit a competent answer, regularly made out, and filed in the papers of the cause in due time, and decree against its negations, purely because there had been an omission to enter it of record in Court, especially when a motion has been made at the hearing to enter it, nunc pro tunc, yet where it has not been tendered within the time prescribed by law and the rules of practice, and is subject to the discretion of the Court, whether it shall be filed at all or not; and especially, where it does not appear, as in the present case, whether it was ever filed among the papers of the cause, before the hearing, and if filed before, when it was filed, it would not be competent for this Court to treat it as a part of the record, and act upon it as if regularly and legally admitted by the Circuit Court. If so, the power of the Circuit Court to admit or reject an answer, not tendered in due time, would be rendered nugatory, and each defendant would be enabled to thrust *107 his answer among the papers of the cause at any period, and derive the same advantage from it, as if filed in due time. But if the answer were admitted, we incline to think that the proof, though vague, would be regarded as sufficient to establish the contract, against the negation in the answer.
Several children of a deceased father remained with their mother, who had a right to charge their guardian for their support; she had also, a claim on him, for the board and clothes of two, under a special agreement; he made payments, for which she gave general receipts, as for the support of the heirs &c: the receipts are not evidence of payments on the special agreement; and, as he failed to direct the application, she may apply the payments to the other claims; and, that she did so, is sufficiently proved by her bill claiming the special contract as still all due.
A guardian agrees to pay the ward’s mother a certain sum for their support: as he is personally liable for it, it is no defence that he has exhausted their estate in paying other debts.
But it is contended, that Lindsey has more than paid the sixty dollars since his assumpsit to the widow; and her receipts are relied upon to prove it. The receipts purport to be an acknowledgment of the widow of the receipt of some small sums for her support of the heirs of her deceased husband, and not in payment of the sixty dollars assumed for the board and clothing of Thomas and William. Now it appears that there were some six or seven of the heirs, all of whom had been maintained by the widow, for longer or shorter periods, from 1825, when her husband died.
The sums paid did not near extinguish the amount she was entitled to, exclusive of the sixty dollars. Though Lindsey had a right to direct the payments to the credit of the sixty dollars, he did not do so, but directed them to the payment of demands due for the support of the whole of the heirs. And as Thomas and William’s proportion of the amount paid, would not extinguish the sums due for their support, exclusive of the sixty dollars, and as Lindsey has not applied the payments to the extinguishment of the sixty dollars specifically, this Court will not now so apply them as to defeat the set-off; especially as the widow, who had the election to apply-the credits when the debtor failed to do so, has indicated her intention, by the prosecution of the suit for the set-off.
But it is contended, that Lindsey, as the guardian, has paid out, in satisfaction of debts owing from the decedent, all the rents and other funds belonging to the heirs, that have come to his hands, and ought not to pay the sixty dollars out of his own pocket. The assumpsit was the assumpsit of Lindsey; the duty performed undertaken at his instance, and performed upon the faith of his promise. To him she had a right to look for pay. And if he has applied the funds in his hands to other uses, it *108 was his own fault, and can form no justification for his breach of promise.
A man died possessed of real estate, which he held under title bonds—part of the consideration unpaid. The personalty & slaves are exhausted, and debts remain due, which must come out of the rents and profits of the real estate: the dower,which has been allotted to the widow, may, perhaps, be made to contribute, to pay those debts: if so, the proportion to be assessed upon it will not be a third of the debts; but should be ascertained by comparing the value of the dower interest—estimated by calculating the time that the widow will probably live—with the value of the fee simple; and the widow should pay the same proportion of the debts which the value of her interest in the estate bears to its entire value.
Again: it seems that Stevens,at his death, held a bond on Bush, for a title to a ferry and ground appurtenant; that he owed a balance of two thousand dollars of the consideration, and that the. whole, of the personal estate and slaves had been consumed in paying debts, and that there was a balance of fifteen hundred or two thousand dollars, with what remained of the consideration for the ferry, unpaid; and that the ferry tract, and another small lot upon which was the mansion house, and which remained in the possession of the widow, and was also held by bond title, was the only real estate of which Stevens died possessed. And it is contended, upon the principle of marshalling the assets and substitution, that the other creditors should be substituted in the place of Bush, in his charge upon the land, for the consideration, to the extent of the amount of his debt paid out of the personal estate; and, as this charge upon the ferry is prior in time and paramount in equity to the widow’s right to dower in the land, that she must take her dower in the ferry and the rents, of the ferry, subject to this charge upon it. And with the rents of the mansion house, and her share of the rents of the ferry, when reduced by her share of the charge upon the land, she has received, over and above her share of the rents, a sufficient sum to extinguish her whole claim for the maintenance of the heirs.
The above positions of law maybe more appropriately examined in the suit now depending in Clarke in behalf of the widow, for the settlement of the whole of her demands.
But admitting them to be correct, her share of the burthen should not be equal to a third, as assumed by Lindsey’s counsel, but should be regulated by the value of her life estate in one third, compared with the value of the whole fee simple estate. She should not be compelled to bear a greater proportion of the burthen than her comparative interest in the estate. And the value of her interest is to be estimated by various extraneous *109 circumstances, as her age and constitution—her prospect of long or short life.
If from age, infirmity or disease, the probable estimate of the life of a widow would not exceed one year, and the charge upon the estate was just equal to one year’s rent of the whole estate, it would appear, at first blush, palpably unjust to apply her whole dower interest to the payment of the debt; which would be the case, if she was made chargeable with one third of the burthen upon the whole estate; and which, in effect, would amount to depriving her of dower altogether.
If the rents are applied to the extinguishment of the debt, she should be allowed, in a settlement with the heirs, one third of the rents, lessened by the value which one year’s interest bears to the whole fee simple estate.
If this rule be adopted, estimating the constitution of the widow in this case by the number and ages of the, children which she has had (and we have no other criterion from the proof in the cause,) her proportion of the charge upon the estate would probably not exceed the one sixth of the whole amount, instead of one third.
Assuming this as the criterion, the amount due her will at least exceed the sixty dollars, which has been allowed as a set-off.
We are satisfied, therefore, without going into a minute calculation of the precise amount due her, that the decree of the Circuit Court should be affirmed.